UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>                              Plaintiffs,<br><br>v.<br><br>BLACKROCK, INC.,<br>STATE STREET CORPORATION,<br>THE VANGUARD GROUP, INC.,<br><br>                              Defendants. | CIVIL ACTION NO. 6:24-cv-00437-JDK<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANT THE VANGUARD GROUP, INC.'S MEMORANDUM OF LAW IN
<u>FURTHER SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS</u>**

## TABLE OF CONTENTS

Introduction ................................................................................................................ 1

Argument ................................................................................................................... 1

I.      Plaintiffs Fail To Plead Facts Connecting Vanguard To The Alleged Conspiracy. ............. 1

      A.      The Complaint pleads facts inconsistent with Vanguard's participation in the alleged conspiracy. ......................................................................... 2

      B.      Plaintiffs' remaining allegations do not salvage their claim against Vanguard. ..................................................................................... 5

II.     Plaintiffs Fail To State A Claim Against Vanguard Under Clayton Act § 7 ....................... 8

III.    The Complaint Fails to Allege Any Other Viable Claim Against Vanguard ....................... 9

Conclusion .................................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)........................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................4, 5, 6, 7

*Coleman v. Drake*,
409 F.3d 665 (5th Cir. 2005) ..........................................................................3

*Collin v. Morgan Stanley Dean Witter*,
224 F.3d 496 (5th Cir. 2000) ..........................................................................3

*Golden Bridge Tech., Inc. v. Motorola, Inc.*,
547 F.3d 266 (5th Cir. 2008) ..........................................................................8

*Hyder v. Quarterman*,
2007 WL 4300446, (S.D. Tex. 2007) ..............................................................3

*In re Int. Rate Swaps Antitrust Litig.*,
261 F. Supp. 3d 430 (S.D.N.Y. 2017)..............................................................5

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) ..........................................................................3

*Malaney v. UAL Corp.*,
2010 WL 3790296 (N.D. Cal. 2010) ................................................................9

*Mosaic Health Inc. v. Sanofi-Aventis U.S. LLC*,
714 F. Supp. 3d 209 (W.D.N.Y. 2024) ............................................................2

*In re Online Travel Company (OTC) Hotel Booking Antitrust Litig.*,
997 F. Supp. 2d 526 (N.D. Tex. 2014) ........................................................2, 5, 6

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015) ......................................................................1, 2

*In re Travel Agent Comm'n Antitrust Litig.*,
583 F.3d 896 (6th Cir. 2009) ..........................................................................2

*United States v. Tracinda Inv. Corp.*,
477 F. Supp. 1093 (C.D. Cal. 1979) ................................................................8

*Walker v. Collier*,
  2018 WL 11463054 (E.D. Tex. 2018) ...............................................................................3

*Wiltfong v. California State Bd. of Acct.*,
  2018 WL 935398 (W.D. Tex. 2018) ..................................................................................1

## Statutes and Regulations

15 U.S.C. § 18 .............................................................................................................8, 9

17 C.F.R. § 229.105 ........................................................................................................7

## INTRODUCTION

Plaintiffs have not pled facts sufficient to connect *Vanguard* to any of the alleged antitrust violations.  Plaintiffs assert that three leading asset managers—Vanguard, BlackRock, and State Street—conspired in violation of Section 1 of the Sherman Act to "coerce [coal] companies to reduce their collective output of coal."  (AC ¶ 256.)  Plaintiffs also assert that each Defendant violated Section 7 of the Clayton Act by using its alleged influence over coal companies to induce those companies to cut production.  (*Id*. ¶¶ 65, 94, 251.)  To sustain those claims as to Vanguard, Plaintiffs "must specify how [Vanguard] w[as] involved" in the alleged wrongdoing.  *Wiltfong v. California State Bd. of Acct.*, 2018 WL 935398, at *2 (W.D. Tex. 2018) (citation omitted).  But far from specifying how Vanguard supposedly coerced or induced coal companies to cut production, the Complaint makes clear that Vanguard did no such thing.  Across each of the core elements of the alleged "output reduction scheme" (AC ¶ 6), Vanguard's conduct cannot be reconciled with the suggestion that it participated in any such scheme.  For these reasons and the additional reasons set forth in Defendants' joint motion to dismiss, Vanguard should be dismissed from this action.

## STATEMENT OF THE ISSUES

Whether the Complaint states a Sherman Act Section 1 claim, Clayton Act Section 7 claim, state-law antitrust claim, or Louisiana Unfair Trade Practices Act claim against Vanguard.

## ARGUMENT

## I.     Plaintiffs Fail To Plead Facts Connecting Vanguard To The Alleged Conspiracy.

"[W]hen asserting an antitrust claim, a plaintiff 'cannot assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group.'" *Wiltfong*, 2018 WL 935398, at *2 (quoting *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  "Instead, a complaint must specify how these defendants were involved" in the alleged conduct, ignoring "indeterminate assertions against all defendants."  *Id.* (quoting *SD3*,

801 F.3d at 422) (internal quotation marks omitted and alterations accepted); *see also, e.g.*, *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 905 (6th Cir. 2009) (similar).   Where a complaint "fails to allege particular facts against a particular defendant, then the defendant must be dismissed."  *SD3*, 801 F.3d at 422.

Plaintiffs have not satisfied these basic pleading standards as to Vanguard.  Plaintiffs assert in conclusory terms that "Defendants" entered into a conspiratorial agreement "to set and enforce output restrictions on coal" (AC ¶116), but they fail to plead facts sufficient to implicate Vanguard in any such conspiracy.

### A.   The Complaint pleads facts inconsistent with Vanguard's participation in the alleged conspiracy.

Plaintiffs have not attempted to plead facts "directly showing" Vanguard's participation in the alleged conspiracy.  *In re Online Travel Company (OTC) Hotel Booking Antitrust Litig.*, 997 F. Supp. 2d 526, 534 (N.D. Tex. 2014).  Instead, they try to piece together a plausible *inference* of conspiracy from allegations that Vanguard and the other Defendants engaged in "suspicious or suggestive" parallel conduct that "would probably not result 'absent an agreement.'"  *Id*. at 536–37.  But all of the conduct the Complaint attributes to Vanguard is far more divergent than parallel, and many of the allegations affirmatively undermine any inference that Vanguard participated in the alleged conspiracy.  *See, e.g.*, *Mosaic Health Inc. v. Sanofi-Aventis U.S. LLC*, 714 F. Supp. 3d 209, 220 (W.D.N.Y. 2024) (dismissing conspiracy claim "where the alleged conspirators engaged in divergent conduct").

*First*, Plaintiffs fail to plead a single instance in which Vanguard ever cast a proxy vote contrary to the recommendations of coal company management.  Defendants supposedly carried out the alleged conspiracy by using proxy votes to "coerce," "discipline," "threaten," "influence,"

2

and "pressure" coal company management into doing their bidding.[1]  As to Vanguard, however, the Complaint is bereft of any factual allegations that support those conclusory assertions:  the Complaint fails to identify *any* instance in which Vanguard ever voted against coal company management or a coal company director.

The conspicuous absence of any such allegations is no accident.  The same judicially noticeable SEC records that Plaintiffs cite in their Complaint confirm that Vanguard voted *with* coal company management on *all* of the proxy votes discussed in the Complaint, including in those instances in which another Defendant voted against management.[2]  Vanguard's unbroken record of voting *with* coal company management regardless of how other Defendants voted cannot be reconciled with the suggestion that it conspired with the other Defendants "to use the shares they have acquired in the Coal Companies to coerce those companies to implement and adhere to a scheme of coordinated output reductions."  (AC ¶ 255.)

---

[1] *E.g.*, AC ¶ 5 (Defendants allegedly exerted "pressure" through "proxy voting"); ¶ 6 (Defendants allegedly "leveraged their … voting of shares to facilitate an output reduction scheme"); ¶ 95 (Defendants allegedly asserted "influence" by "actively voting for changes in management"); ¶ 178 (alleging that unidentified parties "used the proxy voting system to … ask companies to shutter or divest their coal assets"); ¶ 221 ("voting on directors is the primary mechanism" an asset manager has "to force companies to act"); ¶ 225 ("voting of shares" allegedly "reduc[ed] coal production"), ¶ 256 (Defendants "have voted their shares both to coerce compliance with their demands and to threaten removal of management").

[2] Plaintiffs rely on SEC records available on the SEC website to identify votes by the other Defendants.  (*E.g.*, AC ¶¶ 165, 205(b), 212 nn. 117, 166, 181.)  Those same SEC records confirm that Vanguard voted *with* coal company management throughout the relevant period.  *See* Exs. 1–3 (extract from 2021–23 Vanguard Proxy Voting Records, EDGAR Database); *see also* Joint Brief at 6.  This Court may take judicial notice of these government records, especially as they are incorporated by reference into the Complaint.  *See Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of records from government website); *Collin v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (judicial notice appropriate for materials "referred to in the plaintiff's complaint and … central to [plaintiff's] claim"); *Coleman v. Drake*, 409 F.3d 665, 667 (5th Cir. 2005) (district court entitled to take judicial notice of website where plaintiff "relied on the same website"); *Walker v. Collier*, 2018 WL 11463054, at *3 (E.D. Tex. 2018) ("The Fifth Circuit has determined that courts may take judicial notice of governmental websites." (quoting *Hyder v. Quarterman*, 2007 WL 4300446, at *3 (S.D. Tex. 2007))).

*Second*, Vanguard also acted inconsistently with the other Defendants with respect to the two climate organizations discussed in the Complaint—Climate Action 100+ and the Net Zero Asset Managers Initiative ("NZAM").  Plaintiffs assert that Climate Action 100+ was the "hub" of the purported "output reduction cartel" (AC ¶ 125), but Vanguard never joined that organization.  (*Id*. ¶¶ 116, 126.)  And as to NZAM, Plaintiffs allege that Vanguard joined in 2021 and then promptly *withdrew* in 2022.  (*Id.* ¶¶ 129, 151.)

Furthermore, even in the brief period when Vanguard belonged to NZAM, its membership made no difference to its conduct.  According to the NZAM disclosure document cited and quoted in Plaintiffs' Complaint (AC ¶ 142 & n.81), Vanguard expressly disclosed that the vast majority of its assets under management are invested in index funds that "cannot be committed to net zero targets" absent a government mandate.  (Ex. 4 at 3.)  It further emphasized that "maximiz[ing] returns for the investors in our products is our central objective."  (*Id*. at 2).  Vanguard thus announced that a mere 4% of total assets under management could be managed "in a net zero-aligned manner," with those assets consisting solely of assets invested in funds that either had "net zero commitments as part of the product design" or had a preexisting investment philosophy of "consider[ing] climate risk" as a means of "deliver[ing] long-term shareholder value."  (*Id*. at 2, 3).  This Court can and should "take notice of the full contents" of the documents selectively quoted in Plaintiffs' Complaint.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 n.13 (2007).

*Third*, the Complaint never identifies *any* Vanguard conduct that allegedly resulted in reduced coal production.  Plaintiffs devote an entire section of their Complaint to an attempt to catalog Defendants' purported "Actions to Enforce the Carbon Output Restrictions."  (AC ¶¶ 167–181.)  But the Vanguard chapter of that section is an empty void:  it fails to identify any actual threats, votes, or other coercive conduct that allegedly "enforced" the purported output restrictions.

All this section alleges as to Vanguard is that at one point it made a general announcement—not specific to coal companies—that it would "likely" support shareholder disclosure proposals that "require disclosure pursuant to frameworks endorsed by Vanguard's Investment Stewardship program." (*Id*. ¶ 180.) That vague allegation of possible support for some sort of disclosure framework is no substitute for concrete factual allegations that Vanguard coerced coal companies to cut production. The striking absence of any such allegations leaves Plaintiffs unable to state a Section 1 claim against Vanguard. *See, e.g.*, *In re Int. Rate Swaps Antitrust Litig.*, 261 F. Supp. 3d 430, 483 (S.D.N.Y. 2017) (dismissing defendant not alleged to have "d[one] anything specific to further the conspiracy").

**B.      Plaintiffs' remaining allegations do not salvage their claim against Vanguard.**

All of the Vanguard conduct discussed above tends to refute rather than support Plaintiffs' suggestion that Vanguard conspired with the other Defendants to "coerce [coal] companies to reduce their collective output of coal." (AC ¶ 256.) Nor does any of the Vanguard conduct discussed in Plaintiffs' remaining allegations raise a plausible inference that Vanguard participated in the alleged conspiracy. When Plaintiffs' conclusory rhetoric is stripped away, their remaining allegations assert only that Vanguard (i) met with four of the nine coal companies at issue, and (ii) made a handful of unilateral, public statements regarding governance and climate issues. These allegations raise no inference of conspiracy because the alleged conduct is "not only compatible with, but indeed [is] more likely explained by, lawful, unchoreographed free-market behavior." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009); *accord, Twombly*, 550 U.S. at 557 (no inference of conspiracy from "parallel conduct that could just as well be independent action"); *In re OTC*, 997 F. Supp. 2d at 537 (no inference of conspiracy from "parallel adoption of similar business strategies" that are consistent with "common economic experience").

**Meetings with coal companies.**  Plaintiffs allege that from 2021 to 2023, Vanguard had a total of four meetings with U.S. coal companies in which Vanguard funds were invested.  (AC ¶¶ 157–158, 160.)  But meeting with companies in which Vanguard funds were invested was "only natural anyway," *Twombly*, 550 U.S. at 566, and "made perfect economic sense," *In re OTC*, 997 F. Supp. 2d at 537.  Indeed, the Vanguard annual report that Plaintiffs used to identify these meetings reveals that Vanguard had more than a thousand meetings with a wide variety of portfolio companies in 2021 alone.  (Ex. 5 at 2.)

Plaintiffs provide no description of what happened at the four meetings with coal companies, and they rightly refrain from alleging that Vanguard used those meetings to coerce the companies to cut production.  Nor could any such allegation responsibly be made, since coal output *did not decline* following the meetings.  Plaintiffs' own tables confirm that the two coal companies that met with Vanguard in 2021 (Arch and Vistra) collectively increased production by a total of 12.2 million tons in 2021 and 2022, that the company that met with Vanguard in 2022 (CONSOL) increased production by 0.1 million tons in 2022, and that the company that met with Vanguard in 2023 (Alpha) exited the coal markets at least a year before the meeting.  (AC ¶ 240 & tbl. 6; *id.* ¶¶ 228–29 & tbl. 5 (no Alpha coal production as of 2021).)[3]

**Public statements about governance and climate issues.**  Plaintiffs cite several Vanguard public statements about corporate governance and climate issues, but the full text of those statements belies the suggestion that Vanguard was telling coal companies how to run their businesses, much less coercing them to cut coal output.  For example, Plaintiffs cite a 2015 public statement for the proposition that Vanguard does not have "a passive attitude with respect to

---

[3] Plaintiffs also allege that Vanguard met with three foreign coal companies (AC ¶¶ 157–58), but those foreign companies are subject to foreign regulatory regimes and do not participate in the coal markets alleged in the Complaint.

corporate governance" (AC ¶ 155), but that statement was plainly unilateral—not conspiratorial—since it was published *six full years* before a conspiracy allegedly started in 2021 (AC ¶ 255). Moreover, the cited statement confirms that Vanguard engages with portfolio companies only on issues of "good governance" and "ha[s] no interest in telling companies how to run their businesses." (Ex. 6 at 1.) The "full contents" of the cited document thus refute any suggestion that Vanguard dictates portfolio company strategy. *See Twombly*, 550 U.S. at 568 n.13.

Plaintiffs fare no better with their allegations that Vanguard sought "clear disclosures" of potential climate-related risks to coal companies "to allow the market to accurately price securities." (AC ¶¶ 139–40.) These statements raise no inference of conspiracy because investment advisors have obvious *unilateral* reasons—reinforced by SEC regulations—to seek disclosures regarding potential business risks. *See* 17 C.F.R. § 229.105 (requiring disclosure of "material factors that make an investment in the registrant or offering speculative or risky"). Plaintiffs themselves highlight the unilateral reasons to monitor exposure to climate risks when they suggest that investment advisors that ignored climate concerns risked losing so many clients that they could lose "billions of dollars in … revenue." (AC ¶ 204.)

Unable to identify any Vanguard statements that raise an inference of conspiracy, Plaintiffs resort to outright mischaracterization. They assert that a Vanguard "Stewardship Insights" document reflects "*Vanguard's* strategy of 'asking companies to shutter or divest their coal assets'" (AC ¶ 150, emphasis added), but that allegation is a flagrant misrepresentation of the document. Far from suggesting that *Vanguard* had any such strategy, the document states that "activist groups and shareholder proponents"—not Vanguard—have "ask[ed] companies to shutter or divest their coal assets." (Ex. 7 at 1.) The letter goes on to emphasize Vanguard's disagreement with such shareholder proposals, stating that if companies "were to curtail their coal use dramatically and

suddenly, as some shareholder proposals advocate, it could cause significant social and economic disruption and adverse impacts." (*Id.*)

In sum, none of the allegations directed at Vanguard raise a plausible inference of conspiracy because all of the conduct attributed to Vanguard is "at least as consistent with permissible competition, and with independent action, as with unlawful conspiracy." *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 273 (5th Cir. 2008).

## II.    Plaintiffs Fail To State A Claim Against Vanguard Under Clayton Act § 7.

The Clayton Act Section 7 claim against Vanguard should be dismissed because Plaintiffs fail to allege that Vanguard "use[d]" its shares in coal companies to suppress coal output. *See* 15 U.S.C. § 18.  Section 7 states that it "shall not apply to persons purchasing such stock solely for investment and not *using* the same by voting or otherwise to bring about, or in attempting to bring about, the substantial lessening of competition." *Id.* (emphasis added).  Plaintiffs thus recognize that, to state a Section 7 claim against Vanguard, they must plead facts showing that it affirmatively "use[d]" its shares in a manner that lessened competition among the coal companies. *See* AC ¶ 113; *see also United States v. Tracinda Inv. Corp.*, 477 F. Supp. 1093, 1098–99 (C.D. Cal. 1979) (defendant must "us[e]" shares to "lessen competition").

Plaintiffs have not even attempted to allege any instance in which Vanguard "used" its shares to suppress coal production or otherwise lessen competition in the coal markets.  They do not allege that Vanguard cast proxy votes that reduced coal production—rather, as noted above, Vanguard voted *with* coal company management on each and every vote discussed in the Complaint. *Supra* at I.A.  Nor do they identify any meeting or other interaction between Vanguard and a coal company that allegedly caused that company to reduce production. *Supra* at I.B.  Plaintiffs thus fail to plead *any* occasion on which Vanguard "use[d]" its shares "by voting or otherwise" to reduce competition in the coal markets.  15 U.S.C. § 18.

The Section 7 claim against Vanguard independently fails because Section 7 applies only to "acquisition[s]" of shares that threaten competition, *see* 15 U.S.C. § 18, and there are no well-pled allegations that Vanguard's acquisition of shares in coal companies during the relevant period (2020 to 2024) threatens competition in the coal markets. To the contrary, for several of the companies at issue, Vanguard held only a small number of shares;[4] for others it is not alleged to have acquired more shares from 2020 to 2024 (AC ¶ 20, ¶ 30 (NACCO), ¶ 42 (Vistra)); and for yet others, Plaintiffs allege that coal output *increased* after Vanguard acquired shares.[5] Nowhere in the Complaint is there any non-conclusory allegation that Vanguard's acquisition of shares during the relevant period caused a coal company to cut production. That is fatal. *See Malaney v. UAL Corp.*, 2010 WL 3790296, at *5 (N.D. Cal. 2010), *aff'd*, 434 F. App'x 620 (9th Cir. 2011) (Section 7 only violated where acquisition is "reasonably likely to cause anticompetitive effects").

## III.    The Complaint Fails To Allege Any Other Viable Claim Against Vanguard

Plaintiffs also assert that Vanguard conspired to exchange information with the other Defendants (Count III), violated state antitrust laws (Counts IV–XIV), and violated the Louisiana Unfair Trade Practices Act (Count XVIII). These claims fail against Vanguard for the reasons set forth in Defendants' joint brief and for the additional reason that Plaintiffs fail to plead enough facts about Vanguard to state a plausible claim for relief against it.

## CONCLUSION

For the reasons set forth above, the Court should dismiss all claims against Vanguard.

---

[4] AC ¶ 20 (as of 2024, Vanguard funds had less than a 10% aggregate ownership share in NACCO, CONSOL, Alpha, and Hallador, and less than a 13% share in any coal company).

[5] *Compare, e.g.*, AC ¶¶ 26, 34, 38, 46, *with id.* ¶ 240 (Vanguard acquired shares in Arch, CONSOL, Alpha, and Hallidor, each of which increased production, by a collective 24.2 million tons). For the three remaining companies, Peabody production was approximately flat from 2020 to 2022, declining by less than 3% (AC ¶ 240 & tbl. 6); no production information is alleged as to Black Hills (*id.*); and Warrior Met does not participate in the alleged relevant markets (*id.* ¶ 105 n.37).

/s/ Robert D. Wick
Robert D. Wick (*pro hac vice*)
  DC Bar No. 440817
  rwick@cov.com
John S. Playforth (*pro hac vice*)
  MA Bar No. 675766
  jplayforth@cov.com
Shadman Zaman (*pro hac vice*)
  NY Bar No. 5418199
  szaman@cov.com
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel: (202) 662-6000

Bradley C. Weber
  State Bar No. 21042470
  brad.weber@troutman.com
Chase T. Cobb
  State Bar No. 24116208
  chase.cobb@troutman.com
TROUTMAN PEPPER LOCKE LLP
2200 Ross Avenue, Suite 280
Dallas, Texas 75201
Tel: (214) 740-8497
Fax: (214) 756-8497

*Attorneys for Defendant The Vanguard Group, Inc.*

10

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that the foregoing document was filed electronically and served on all counsel of record by the Court's CM/ECF system on March 17, 2025.


Dated: March 17, 2025                    */s/ Robert D. Wick*                    

                                             Robert D. Wick