# Exhibit 6

**Vanguard**

Text of a letter sent by F. William McNabb III, Vanguard's Chairman and CEO, to the independent leaders of the boards of directors of the Vanguard funds' largest portfolio holdings.

February 27, 2015

Dear [Name of Independent Chairman or Lead Director]:

As a substantial investor in [Company Name], we are writing to share Vanguard's views on corporate governance and to provide perspective on the way we think about engagement between shareholders and directors.

Vanguard-sponsored mutual funds and other investment portfolios we manage own a significant number of your company's outstanding shares. We depend on you and your fellow directors to serve as the ultimate stewards of our significant investment. We look to your leadership in matters of governance, compensation, succession planning, and oversight of strategy and risk. Thank you for taking on these critical and weighty responsibilities on behalf of investors.

## Vanguard's principles for corporate governance

Today, Vanguard is one of the largest investment managers in the world, with more than $3 trillion in client assets under management. More than half of the money that we manage is in index equity funds and represents essentially permanent investments in our portfolio companies. An additional $400 billion is in actively managed equity funds that are run with a distinctly long-term perspective. We are large, we don't make a lot of noise, we are focused on the long term, and we don't tend to rush into and out of investments.

In the past, some have mistakenly assumed that our predominantly passive management style suggests a passive attitude with respect to corporate governance. Nothing could be further from the truth. We will be investors in your company during good times and bad. We want to see our clients' investments grow over the long term, and good governance is a key to helping companies maximize their returns to shareholders. We have no interest in telling companies how to run their businesses, but we have valuable governance insights to share with the board of directors. In our view, a good governance program is distinguished by the following principles:

| | |
|---|---|
| Independent oversight | Board should be substantially independent of management and have independent leadership (i.e., chair or lead director). |
| Accountability | Management should be accountable to the board and directors should be accountable to shareholders. |
| Shareholder voting rights consistent with economic interests | This means one share, one vote. No special share classes for added voting power. |
| Annual director elections and minimal anti-takeover devices | Minimize use of anti-takeover devices such as classified boards or poison pills. |
| Sensible compensation tied to performance | Executive pay should be tied to the creation of long-term shareholder value. |
| Shareholder engagement | We encourage boards to have a thoughtful process to communicate with shareholders. |

## Engagement in focus: Why it's important

The relationship between corporate boards and large shareholders is important, but too often, there's precious little communication between the two parties. The case for effective engagement is compelling for both shareholders *and* boards.

We've observed that the best boards work hard to develop "self-awareness," and seek feedback and perspectives independent of management. They ask the right questions to understand how their company may be different than peers, and whether those differences are strengths or vulnerabilities. We believe boards that provide such context to investors are less likely to be surprised by activists or proxy votes, and more likely to have stronger support of large long-term shareholders. We also believe that engagement is a dialogue, with both parties listening to and informing each other.

## Different avenues for engagement

While we advocate for shareholder engagement, we don't presume to know what the optimal structure for engagement looks like for your board. To be sure, there is no one-size-fits-all engagement program. We encourage you to speak to your board about engagement, and create a process that meets your needs and those of your shareholders. We've found that having an established channel or process for shareholder interaction works better than handling engagement requests in an ad hoc or reactive manner.

We have suggested the creation of a "Shareholder Liaison Committee" as one possible means to promote better and richer communication between shareholders and boards, and believe such a committee can provide an appropriate structure for communicating with significant shareholders. We've also seen boards successfully assign engagement expectations to existing committees, or embed such expectations into certain board roles (e.g., independent chair, lead independent director, committee chairs). Ultimately, it's more about the behavior than the framework. We're indifferent as to how a board chooses to engage. What's important to us is *that* it engages.

And when they engage, boards should be prepared to enter into a dialogue on appropriate issues of interest to significant, long-term investors. Some investors may be primarily interested in engaging on environmental, social, or governance considerations. Other investors may have a particular perspective to share regarding the company's strategy or management relative to peers. In any event, these perspectives represent the views of the investors on whose behalf directors serve, and we believe that directors should understand them. In addition to providing a venue to gather unfiltered shareholder perspectives, directors should invite communication with those shareholders who may have a legitimate interest in gaining a deeper understanding of board oversight of succession, compensation, or risk management—without encroaching on management's primary role to communicate with investors regarding the business.

## Don't be dissuaded by common concerns

As with any change in behavior, there may be questions or objections from those who have yet to fully embrace more significant engagement. That said, we do not believe these should be insurmountable barriers to progress. Among the perspectives we've heard in this regard are the following:

- *"Strong shareholder-director engagement will disintermediate management."* This is not what large shareholders seek in an engagement program. Boards often choose to include management for legal support and to discuss operational issues. There are also matters that are the exclusive province of the board (e.g., CEO compensation), which we believe are appropriate for discussion with the board alone.

- *"We'll get tripped up on Reg FD issues."* To be clear, we are not seeking inside information on strategy or future expectations. Rather, we are seeking to provide the perspective of a long-term investor. Individual firms should decide how to manage this risk. You may choose to train directors, include your legal counsel in shareholder conversations, and/or set clear boundaries for discussions.

- *"There is no time in our agenda."* Individual boards can decide how much time to allot to engagement. Respectfully, we'd submit that time for engagement with significant shareholders deserves consideration on a board's agenda. After all, investors are an important constituency whom boards represent.

- *"This would be too difficult to implement."* Many companies already have substantive engagement programs in place. The Shareholder-Director Exchange (SDX) Protocol, available at sdxprotocol.com, offers guidance for such programs. This protocol also provides specific considerations for companies that may be concerned about Regulation FD.

### Share your perspective

I encourage all boards to actively communicate how they engage with investors. Do you already have an engagement process in place? Have previous engagements with investors resulted in positive outcomes? Large shareholders like Vanguard want to know your approach and how you plan to engage.

Please know that when you talk, we listen. When you provide updates in your proxy materials or post statements on your company's website, we read them. We pledge to be clear and transparent about our expectations, and we ask that you do the same. We look forward to partnering with you as you consider how to effectively engage with your large and long-term shareholders. Our governance team, reachable at CorporateGovernance@vanguard.com, stands ready to work with you to understand how best to promote meaningful communication between shareholders and directors for our mutual benefit.

Thank you for serving as the stewards of our investment in your company.


Sincerely,


F. William McNabb III
Chairman and Chief Executive Officer