UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, *et al.*, | |
| Plaintiffs, | Civil Action No.  6:24-cv-437-JDK |
| V. | |
| BLACKROCK, INC., STATE STREET CORPORATION, AND THE VANGUARD GROUP, INC., | |
| Defendants. | |

DEFENDANT STATE STREET'S MEMORANDUM IN SUPPORT
OF DEFENDANTS' JOINT MOTION TO DISMISS COUNTS I–XIV AND XVIII
OF THE AMENDED COMPLAINT AND REQUEST FOR ORAL ARGUMENT

**TABLE OF CONTENTS**

I.      Plaintiffs do not plead State Street participated in any conspiracy or that its
        acquisitions of stock affected competition...................................................................... 1

        A.      State Street is a small shareholder that doesn't control coal producers and
                did nothing to reduce coal production. .................................................................. 2

        B.      Plaintiffs do not allege State Street agreed to constrain coal output....................... 4

II.     The State of Louisiana's Unfair Trade Practices Act claim fails. ..................................... 5

        A.      Louisiana does not plead facts showing State Street is subject to LUTPA............. 5

        B.      Louisiana does not plead State Street engaged in any unfair or deceptive
                acts or practices..................................................................................................... 6

III.    Conclusion ...................................................................................................................... 7

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Bombet v. Donovan*,
  No. 13-118-SDD-SCR, 2015 WL 65255 (M.D. La. Jan. 5, 2015) .............................................. 6

*Bowling v. Dahlheimer*,
  No. 4:18-CV-610-ALM-CAN, 2019 WL 4463466 (E.D. Tex. Aug. 7, 2019), *report and
  recommendation adopted,* No. 4:18-CV-610, 2019 WL 4454373 (E.D. Tex. Sept. 17,
  2019)............................................................................................................................................... 2

*Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*,
  35 So. 3d 1053 (La. 2010).......................................................................................................... 7

*Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*,
  No. 6:18-cv-30-JDK, 2019 WL 6699739 (E.D. Tex. Mar. 25, 2019)......................................... 6

*Hopkins v. Howard*,
  2005-0732 (La. App. 4 Cir. 4/5/06), 930 So. 2d 999................................................................... 6

*Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*,
  88 F. Supp. 3d 602 (E.D. La. 2015)............................................................................................ 7

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ...................................................................................................... 8

*Pinero v. Jackson Hewitt Tax Serv. Inc.*,
  594 F. Supp. 2d 710 (E.D. La. 2009).......................................................................................... 8

*Rahman v. Allstate Ins. Co.*,
  644 F. Supp. 3d 231 (E.D. La. 2022).......................................................................................... 8

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
  801 F.3d 412 (4th Cir. 2015) ................................................................................................. 1, 2

*Truong v. Bank of Am., N.A.*,
  717 F.3d 377 (5th Cir. 2013) ...................................................................................................... 6

*Vara v. Chase Home Fin., LLC*,
  No. A-11-CA-318-SS, 2011 WL 13324274 (W.D. Tex. June 17, 2011) ..................................... 2

*Wiltfong v. Cal. State Bd. of Accountancy*,
  No. EP-17-CV-0355-PRM, 2018 WL 935398 (W.D. Tex. Feb. 16, 2018)................................. 2

**Statutes**

LA. STAT. ANN. § 51:1405 ................................................................................................................ 7

LA. STAT. ANN. § 51:1406(1)............................................................................................................ 6

LA. STAT. ANN. § 51:1406(a)............................................................................................................ 7

**Rules**

FED. R. CIV. P. 9(b).......................................................................................................................... 8

The Amended Complaint ("Complaint" or "AC") is implausible for the reasons outlined in the Joint Motion to Dismiss, but it is especially implausible with respect to State Street.[1] The gist of the Complaint is that three asset managers agreed to use their minority stakes in publicly traded coal companies to cause those companies to produce less coal. As the Complaint concedes, the facts disprove that conspiracy theory in two ways. First, as outlined in the Joint Motion, coal production *increased* during the alleged conspiracy period. Second, the Complaint does not allege State Street ever told a coal company to produce less coal or even met with a coal producer. Thus, the Complaint is fundamentally implausible as to State Street: Plaintiffs do not allege State Street tried to depress coal production, and coal production actually went up. That is the antithesis of a plausible conspiracy. The federal antitrust claims (Counts I-III) and Louisiana Unfair Trade Practice Act claim (Count XVIII) against State Street should be dismissed.

## I.    Plaintiffs do not plead State Street participated in any conspiracy or that its acquisitions of stock affected competition.

To state a claim against State Street, Plaintiffs must allege facts about State Street specifically—not merely throw State Street into a group of defendants and paint them with a broad brush. "A plaintiff in a [Section 1] case cannot assemble some collection of defendants and make vague, non-specific allegations against all of them as a group." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015). "A complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct." *Bowling v. Dahlheimer*, No. 4:18-CV-610-ALM-CAN, 2019 WL 4463466, at *2 (E.D. Tex. Aug. 7, 2019) (citation omitted), *report and recommendation adopted,* No. 4:18-CV-610, 2019 WL 4454373 (E.D. Tex. Sept. 17, 2019). Rather, "factual allegations must be placed in a context plausibly suggesting (not merely

---

[1] Capitalized terms in this memorandum are used as defined in the Joint Motion.

1

consistent with) each required element of the claim against *each defendant*." *Vara v. Chase Home Fin., LLC*, No. A-11-CA-318-SS, 2011 WL 13324274, at \*2 (W.D. Tex. June 17, 2011) (citation omitted) (emphasis added). A "complaint must 'specify how these defendants [were] involved in the alleged conspiracy,' without relying on 'indeterminate assertions' against all 'defendants.'" *Wiltfong v. Cal. State Bd. of Accountancy*, No. EP-17-CV-0355-PRM, 2018 WL 935398 at \*2 (W.D. Tex. Feb. 16, 2018). "[I]f [the complaint] fails to allege particular facts against a particular defendant, then the defendant must be dismissed." *SD3*, 801 F.3d at 422 (citation omitted).

### A.      State Street is a small shareholder that doesn't control coal producers and did nothing to reduce coal production.

As Plaintiffs acknowledge, "State Street is smaller" than the other defendants they have targeted. State Street is only the *eleventh* largest shareholder for Hallador, the *eighth* for NACCO, the *fifth* for CONSOL, the *fourth* for Peabody and Vistra, and a distant third for the others. AC ¶ 20, Table 1. With State Street owning as little as 1% and no more than 6% of the producers at issue, it is no surprise that Plaintiffs do not allege *once* in the Complaint that State Street has exercised "control" over a coal producer.

Moreover, Plaintiffs do not draw any connection between State Street acquiring shares in a coal producer and that coal producer deciding to reduce production. In fact, Plaintiffs allege the opposite. As Plaintiffs have it, when State Street increased its holdings in a coal producer, that coal producer was *more likely to increase production* than to reduce it:

| Coal Producer | Do Plaintiffs allege State Street increased or decreased its holdings?[2] | Do Plaintiffs allege the producer grew production or shrank production during the conspiracy?[3] |
|---|---|---|
| Peabody | Increased holdings | Shrank |
| Arch | Decreased holdings | Grew |
| NACCO | Decreased holdings | Shrank |
| CONSOL | Increased holdings | Grew |
| Alpha | Increased holdings | Grew |
| Vistra | Increased holdings | Shrank |
| Hallador | Increased holdings | Grew |
| Warrior Met | Decreased holdings | Shrank |
| Black Hills | Decreased holdings | Shrank |

Plaintiffs' inability to allege State Street impacted production makes sense, because, even when Plaintiffs speculate about what asset managers could do to affect coal production, they do not allege that State Street did those things:

- Plaintiffs do not identify a single coal producer or a single CEO that State Street threatened in any way. *See* AC ¶¶ 166, 176, 256.

- Plaintiffs do not allege even a single meeting between State Street and a coal producer. AC ¶¶ 157-158, 160.

- Plaintiffs do not allege that State Street ever announced a policy of voting against directors based on whether they adopted emissions targets. AC ¶ 220.

- Plaintiffs allege that over three years and nine coal producers, State Street cast only six "no" votes against either a director or a pay package, and in not one case do Plaintiffs allege State Street said it was doing so over coal production, emissions targets, or other climate issues, or that the votes affected any output decision by a coal producer. AC ¶¶ 169-170, 177.

---

[2] AC ¶¶ 24, 28, 32, 36, 40, 44, 48, 52, 56.
[3] AC ¶ 240, Table 6 (2020 vs. 2022 production).

Indeed, Plaintiffs' allegations about State Street have nothing to do with any conduct affecting the U.S. coal industry; they carefully limit their allegations to supposed interactions with companies in other industries or investment strategies in other countries.[4] Plaintiffs do not allege facts from which the Court could plausibly infer State Street affected U.S. coal production at all.

###### B.    Plaintiffs do not allege State Street agreed to constrain coal output.

Plaintiffs assert that joining NZAM or CA100 was somehow tantamount to an agreement to force coal producers to cut emissions, or force climate goals on them. But Plaintiffs never allege facts showing State Street agreed to implement any "net zero" goals on coal producers or even that State Street adopted net-zero goals for investment funds holding coal company stocks. Indeed, Plaintiffs rely exclusively on documents showing State Street's net-zero program was quite limited. Plaintiffs' allegations refer to a net-zero program covering only *14% of State Street's assets*. *See* AC ¶ 143 n.83, Ex. 2 at 2. Those assets were (i) portfolios explicitly "managed pursuant to a climate strategy"; (ii) funds or accounts domiciled in Europe; or (iii) separately managed accounts domiciled in the U.S., but "only if the client has embraced net-zero or a similar climate pledge." *Id.* at 2–3. State Street made clear that any net-zero "targets will only be achieved if net zero is important to our clients and they instruct us to achieve that objective in the portfolios we manage for them," and said State Street would "not depart from client mandates to achieve net zero, force any client to embrace net zero, or sell companies in any index because those companies do not achieve net zero targets." *Id.* at 2. Plaintiffs do not even allege that any net-zero funds State Street managed were related to coal producers at all.

Similarly, Plaintiffs do not allege that State Street's joining CA100 caused any reduction in coal production. Plaintiffs point to State Street's announcement that it was joining CA100, but

---

[4] AC ¶¶ 149, 165 (engagement and voting outside the coal industry); AC ¶¶ 146–149 nn.87–89 (citing article describing theoretical climate investing approaches written by State Street executives for Europe, the Middle East, and Asia, attached as Exhibit 1).

that document says nothing about coal; it merely says State Street's "goal" was to make it "easier for investors to understand the sustainability risks and opportunities in their portfolios." AC ¶ 128 n.61, Ex. 3 at 3. Although Plaintiffs claim CA100 members agreed to obtain commitments from coal producers to set and meet production targets, there are no allegations that State Street caused any coal producer to set or meet a production target, or that State Street caused a producer to reduce supply. AC ¶¶ 120–123. The only facts Plaintiffs point to are that State Street has addressed ESG when it is "good business practice" and "essential to a company's long-term financial performance." *See* AC ¶ 166 n.118, Ex. 4 at 2; AC ¶ 176 n.127, Ex. 5 at 15. Plaintiffs allege no facts from which the Court could infer that State Street's limited participation in climate organizations constituted a commitment to constrain coal production.

## II.    The State of Louisiana's Unfair Trade Practices Act claim fails.

Louisiana asserts a claim against State Street over consumer-law issues. Louisiana's Unfair Trade Practices Act ("LUTPA") claim must be dismissed for two reasons: (1) State Street is exempt from LUTPA; and (2) Louisiana fails to plead conduct that violates LUTPA, much less does it do so in accordance with Rule 9(b)'s pleading requirements.

### A.    Louisiana does not plead facts showing State Street is subject to LUTPA.

LUTPA does "not apply to … [a]ny federally insured financial institution, its subsidiaries, and affiliates …." LA. STAT. ANN. § 51:1406(1). "The Louisiana Legislature … has not set out any exception to this broad rule," and it is irrelevant whether financial institutions or their affiliates "act in their capacities as banks" for this exception to apply. *See Truong v. Bank of Am., N.A.*, 717 F.3d 377, 387 (5th Cir. 2013); *see also Bombet v. Donovan*, No. 13-118-SDD-SCR, 2015 WL 65255, at *7–8 (M.D. La. Jan. 5, 2015) (dismissing LUTPA claim after taking judicial notice that the defendant was a "third tier" subsidiary of a bank).

State Street is an affiliate of a federally insured financial institution and is therefore

exempt from LUTPA. Judicially noticeable public records[5] show that State Street Corporation is

the parent of, and thus affiliated with,[6] State Street Bank and Trust Company ("SSBT"), a

federally insured financial institution. State Street Corporation's SEC filings confirm it is the

parent of SSBT, which is federally "insured by the FDIC and … is subject to applicable federal

and state banking laws …." Ex. 6 at 17. Further, State Street Corporation's filings with the FDIC

describe SSBT as its "principal banking subsidiary." Ex. 7 at 6. Therefore, Louisiana's LUTPA

claim against State Street is barred by LA. STAT. ANN. § 51:1406(a).

### B.      Louisiana does not plead State Street engaged in any unfair or deceptive acts or practices.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or

practices in the conduct of any trade or commerce." LA. STAT. ANN. § 51:1405. "[T]he range of

prohibited practices under LUTPA is extremely narrow." *Cheramie Servs., Inc. v. Shell

Deepwater Prod., Inc.*, 35 So. 3d 1053, 1060 (La. 2010). "[O]nly egregious actions involving

elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned

based on LUTPA." *Id.* "This 'egregiousness' often involves the breach of a special relationship

of trust." *Nola Fine Art, Inc. v. Ducks Unlimited, Inc.*, 88 F. Supp. 3d 602, 613 (E.D. La. 2015).

Plaintiffs allege no such conduct by State Street. Plaintiffs allege no fraud or unethical

conduct by any Defendant, and although Plaintiffs assert one Defendant made misrepresentations

or deceptive statements, AC ¶¶ 192–224, they do not allege State Street did so. Louisiana has not

---

[5] When "documents are public records directly relevant to the issue at hand, the Court may take judicial notice of them" on a motion to dismiss. *Cypress Lake Software, Inc. v. Samsung Elecs. Am., Inc.*, No. 6:18-cv-30-JDK, 2019 WL 6699739, at *2 (E.D. Tex. Mar. 25, 2019) (Kernodle, J.).

[6] Although LUTPA does not define "affiliate," when the Louisiana Legislature "includ[es] both terms—subsidiary and affiliate"—in a statutory exclusion, "the term affiliate [is] intended to have a broad meaning, which includes a parent company." *Hopkins v. Howard*, 2005-0732 (La. App. 4 Cir. 4/5/06), 930 So. 2d 999, 1008.

identified any act or practice by State Street that would violate LUTPA, much less any egregious actions involving elements of fraud, misrepresentation, deception, or similar conduct. AC ¶¶ 325–327. Because the range of conduct prohibited by LUTPA is "extremely narrow," *see Cheramie Servs., Inc.*, 35 So. 3d at 1060, and not coextensive with other statutes, Louisiana must plead how State Street violated LUTPA.

Moreover, Louisiana falls short of pleading its LUTPA claim with particularity under Federal Rule of Civil Procedure 9(b). Courts apply Rule 9(b)'s heightened pleading requirements to LUTPA claims. *See, e.g.*, *Pinero v. Jackson Hewitt Tax Serv. Inc.*, 594 F. Supp. 2d 710, 721 (E.D. La. 2009). When a court "cannot conclude that [a] [p]laintiff's LUTPA claim does not raise the issue of fraud," it "must meet the heightened pleading standard of Rule 9(b)." *Rahman v. Allstate Ins. Co.*, 644 F. Supp. 3d 231, 241 (E.D. La. 2022). Under Rule 9(b), a plaintiff must plead "with particularity by identifying the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Owens v. Jastrow*, 789 F.3d 529, 535 (5th Cir. 2015) (quotation omitted).

Louisiana does not attempt to plead with particularity in accordance with Rule 9(b). The complaint does not contain any particular statements or conduct by State Street alleged to be "false," "misleading," or "deceptive," much less identify "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Owens*, 789 F.3d at 535. Therefore, Louisiana's LUTPA claim must be dismissed pursuant to Rule 9(b).

## III.    Conclusion

For the reasons set out above and in the Joint Motion, the Court should set the Joint Motion for oral argument and all claims against State Street should be dismissed.

7

Dated: March 17, 2025

Respectfully submitted,

*s/ Jason M. Powers*

Jason M. Powers
  Texas Bar No. 24007867
  jpowers@velaw.com
Stacey Neumann Vu
  Texas Bar No. 24047047
  svu@velaw.com
VINSON & ELKINS LLP
845 Texas Avenue
Suite 4700
Houston, TX 77002
Phone: (713) 758-2222

George M. Kryder
  Texas Bar No. 11742900
  gkryder@velaw.com
Megan Cloud
  Texas Bar No. 24116207
  mcloud@velaw.com
VINSON & ELKINS LLP
2001 Ross Avenue
Suite 3900
Dallas, TX  75201
Phone (214) 220-7719

Stephen M. Medlock (*pro hac vice*)
  DC Bar No. 995636
  smedlock@velaw.com
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Phone (202) 639-6578

Mackenzie G. Newman (*pro hac vice*)
  NY Bar No. 5710785
  mnewman@velaw.com
VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Phone (212) 237-0000

*Attorneys for Defendant State Street Corporation*

8

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 17, 2025, a true and correct copy of the foregoing instrument was served on all counsel of record using the Court's electronic filing system.

*/s/ Jason M. Powers* _____
Jason M. Powers

9