## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 6:24-cv-437-JDK |
| | § | |
| BLACKROCK, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## JOINT ELECTRONICALLY STORED INFORMATION ORDER

1.  **General Provisions**

    a.  **Applicability**: This Protocol Order will govern the production of Electronically Stored Information ("ESI") and paper documents pursuant to Federal Rules of Civil Procedure 26, 33, 34, and 45. To the extent that a Party (as defined infra) collected and processed documents prior to the entry of this ESI Protocol Order, and production of such documents cannot be made in accordance with the terms of this ESI Protocol Order, the Parties will meet and confer concerning the formats of the production of any such documents and whether the party producing documents ("Producing Party") will be required to re-collect or re-process any such documents. Before raising any disputes that arise related to the production of ESI, the Parties agree to meet and confer consistent with Local Rule CV-7(h). This Order shall apply to all current Parties to the above-captioned

1

action, as well as any case that may later be consolidated with this case.

2.  **Definitions**.

   a.  "**Plaintiffs**" as used herein shall mean the States of Texas, Alabama, Arkansas, Indiana, Iowa, Kansas, Missouri, Montana, Nebraska, Louisiana, Oklahoma, West Virginia, and Wyoming, by and through their respective Attorneys General.

   b.  "**Defendants**" as used herein shall mean Defendants BlackRock, Inc.; State Street Corporation; and The Vanguard Group, Inc.

   c.  "**Party**" or "**Parties**" as used herein shall mean either or both Plaintiffs and Defendants.

3.  **Collection**. The Producing Party is in the best position to determine the method by which it will search for and collect ESI in response to discovery requests.

4.  **Search and Review**. ESI searches and review in response to discovery requests shall be done using methods and protocols selected by the Producing Party in a manner that is reasonable and likely to locate relevant, non-duplicative ESI.

5.  **Custodians and Non-Custodial Sources**.

   a.  **Cooperative Process**. The Parties shall cooperate in regard to the selection of custodians and non-custodial sources.

b. **Disclosure**. The Producing Party will disclose the custodians and non-custodial sources from which it has a good faith belief that information that is non-duplicative and responsive to the discovery requests of the Party requesting the production of documents ("Requesting Party") can be obtained in a manner that is proportional to the needs of the case and not otherwise unduly burdensome, as well as any filters, such as dates and otherwise, that will be used to gather documents from those sources. The Requesting Party may propose additional custodians or non-custodial sources if necessary within 14 days and/or in good faith following production and review. For any custodian or non-custodial source where the Producing Party objects because of burden, it shall provide hit counts or other pertinent information to help substantiate its claim of burden where applicable.

c. **Proportionality of Requests**. The Requesting Party shall work in good faith to apply proportionality in its requests for further custodians and non-custodial sources. When the Requesting Party requests that the Producing Party add custodians or non-custodial sources, it must explain the relevance and proportionality of its requested custodians and non-custodial sources. Nothing in this agreement limits or waives any Party's rights and obligation under Federal Rule of Civil Procedure 26 or other applicable rules.

6.  **Search Terms**.

   a.  **Cooperative Process**. The Parties shall cooperate in regard to search term discussions.

   b.  **Search Term Disclosure**. The Producing Party will disclose the search terms used to identify potentially responsive documents. The Requesting Party may propose additional search terms if necessary (i) within 14 days, (ii) within 14 days after receiving hit counts or other information concerning the burden or proportionality of proposed search terms from the Producing Party, and (iii) in good faith following production and review. To facilitate discovery, the Producing Party shall respond in good faith within 5 business days to proposals related to search terms for document custodians whose materials have been gathered and processed. For any term(s) where the Producing Party objects because of burden, it must provide hit counts to help substantiate its claim of burden.

   c.  **Proportionality of Search Term Requests**. The Requesting Party shall work in good faith to apply proportionality in its search term requests. When the Requesting Party seeks requests that the Producing Party use additional search terms, it must request search terms that are related to the claims and defenses in the Litigation. Nothing in this agreement limits or waives any Party's rights and

obligation under Federal Rule of Civil Procedure 26 or other applicable rules.

7. **Document Review**.

    a. **TAR**. The Producing Party shall be responsible for selecting the proper means of reviewing documents for responsiveness to the Requesting Party's discovery requests. In addition to the use of human reviewers, the Producing Party may utilize technology assisted review ("TAR") to review documents that hit on search terms for responsiveness to the agreed-upon or court-ordered scope of a response to a request for production or an interrogatory to which the Producing Party has elected to produce documents pursuant to Federal Rule of Civil Procedure 33(d). Prior to utilizing TAR for document review calls on responsiveness that will not undergo human review, the Producing Party must disclose the fact that they intend to use TAR and the software that they intend to use in order to conduct their TAR workflow. The Producing Party must validate its use of TAR and, upon request, and after the review, provide a description of the validation procedures used.

    b. **AI (not TAR)**. Only if the Requesting Party provides its prior written approval, the Producing Party may utilize artificial intelligence ("AI"), not including TAR, to review documents that hit on search terms for responsiveness to the agreed-upon or court-

ordered scope of a response to a request for production or an interrogatory to which the Producing Party has elected to produce documents pursuant to Federal Rule of Civil Procedure 33(d). When seeking the Requesting Party's approval, the Producing Party must disclose the software they intend to use in order to conduct their AI workflow and describe the validation procedures the Producing Party intends to use. The Producing Party must validate its use of AI and, upon request, and after the review, provide a description of the validation procedures used.The Producing Party has no obligations with respect to this provision unless the AI is relied upon for a responsiveness decision in lieu of TAR or manual human review.

8.  **Use of AI**. Should a Party elect to utilize AI to assist in the review, analysis, or summarization of discovery material produced or exchanged in this Litigation, the Party shall take all necessary steps to ensure that the such application, service, or analytical software is fully containerized (i.e., does not transmit any information to any public system or network for the purpose of analysis, use, or the generation of text outputs in response to queries), has the ability to track all information in the system (including access), and does not otherwise allow access to discovery material produced or exchanged in this Litigation by any person or software for subsequent algorithmic training. For the avoidance of doubt, this restriction expressly applies to

the use of non-containerized advanced large language models, "generative" AI tools, and other advanced AI systems, including, but not limited to, OpenAI, Gemini, LLAMA, MidJourney, and Stable Diffusion, but this provision does not limit the use of services leveraging the technology underlying these generative AI tools in a fully containerized environment, including, but not limited to, Harvey, Relativity aiR, DISCO Cecelia, Everlaw AI, Syllo, Alchemy, Lexis+ AI, Epiq AIDA, and Lighthouse AI. For purposes of clarity, "fully containerized," as used in this Order, means an AI tool that does not share the substance of a prompt or documents reviewed for training of large language models or use the substance of a prompt or documents reviewed in any other matter or inquiry other than this action.

9. **Form of Production**. The Parties agree to produce Documents and data in the formats described below. If particular Documents or categories of Documents identified in response to document requests warrant a different production format, the Parties will meet and confer to arrange for the mutually acceptable production of such Documents. The Parties further agree to observe reasonable efforts to not degrade the searchability of Documents as part of the document production process.

   a. Unless otherwise stated, the following format requirements apply to all paper documents and ESI produced in this Litigation. If a Party

7

intends to produce documents or ESI in an alternative format, the Producing Party shall inform the Requesting Party of the format in which those documents or ESI will be produced in advance of producing those documents or ESI along with an explanation of why an alternative format is necessary.

b.  Except for structured data, and unless otherwise specified herein, all production images will be provided as a black-and-white, single-page Group IV TIFF of at least 300 DPI resolution with corresponding multi-page text and necessary load files. Each image will have a file name that is the unique Bates number of that image. Original document orientation should be maintained to the extent reasonably practicable and technologically possible (i.e., portrait to portrait and landscape to landscape). Produced TIFF images will show all text and images that are visible in the form in which the electronic document was last saved, with the exception of redacted portions. Hidden content, tracked changes, edits, comments, notes, and other similar information viewable within the native file shall be imaged so that this information is captured on the produced image file. Documents containing redactions, whether or not they are otherwise required to be produced in native format, may be produced in TIFF format to preserve redactions.

i.  If ESI responsive to discovery requests is located in structured data sources, the Producing Party may produce responsive data in CSV format. If the data will not be provided in CSV format, the parties shall meet and confer regarding the production format, content, and scope of structured data to be produced.

c.  **Color**: Upon reasonable request, color documents shall be produced in color, as single-page, 300 DPI JPG images with JPG compression and a high quality setting as to not degrade the original image. The Producing Party shall attempt to comply with good faith requests to provide replacement color images for documents originally produced in black and white where color is reasonably necessary to understand the document's meaning. A Party making such a request shall make the request by individual Bates number(s) and shall in good faith limit requests made pursuant to this paragraph to a reasonable number of documents.

d.  **Format of Native Production**: In addition to the ESI identified below in, documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format. Documents produced natively shall be accompanied by a placeholder TIFF image stating "Document Produced Natively." The

corresponding load file shall include NativeFileLink information for each native file that is produced. A Producing Party retains the option to produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF formats. Similarly, the Requesting Party retains the right to request production of a document in its native format, and shall provide the basis for an such request for the Producing Party's consideration. The Parties agree to meet and confer prior to production of any native files other than those enumerated below.

i. The following file types shall be produced in native format in lieu of TIFF format:

- Spreadsheet application files, such as Microsoft Excel files;

- Database files, such as Microsoft Access files, except for structured data;

- Multimedia audio/visual files, such as audio and video recordings (e.g., .wav, .mpeg, and .avi); and

- Presentations, such as Microsoft PowerPoint.

ii. The Parties recognize that emails with embedded objects may appear differently in TIFF format than in native format. The Parties agree to use reasonable efforts to ensure that these

documents, when produced in TIFF format, are legible and retain readability (i.e., that embedded images and comments are viewable in TIFF format). After receipt of the Producing Party's document production, the Requesting Party may reasonably request, on document-by-document basis, that an email with an embedded object (i.e., screenshots, spreadsheets, or other images)[1], be produced in native, to the extent producing a color image does not fix the issue.

e. **Hyperlinked Documents**. The Producing Party is not required to produce hyperlinked documents that cannot be automatically extracted and linked to the original document. The Requesting Party may make reasonable requests for hyperlinked documents and shall provide a list of Bates numbers of the documents sought to be produced in native format for the Producing Party's consideration. The Producing Party retains the right to object to overbroad requests for the reproduction of native format documents on the basis of undue burden and lack of proportionality. The Producing Party is not necessarily obligated to pull all versions of a Hyperlinked Document that may exist. The Parties agree to meet and confer about any such objections in good faith.

---

[1] For purposes of this subparagraph, embedded objects do not include email signatures, logos, emblems or other non-substantive images that may be included in emails.

f. **Compressed Files**: Compression file types (i.e., .CAB, .GZ, .TAR, .Z, and .ZIP) shall be decompressed in a reiterative manner to ensure that a zip within a zip is decompressed into the lowest possible compression resulting in individual folders and/or files.

g. **Password-Protected, Encrypted, or Proprietary-Software Files**: The Producing Party shall reasonably attempt to locate the password for ESI that is password-protected or encrypted and that is reasonably known to contain responsive information.

h. **Parent-child relationships**: Parent-child relationships (the association between an attachment and its parent document) that have been maintained in the ordinary course of business should be preserved to the extent reasonably practicable. Entire document families must be produced, even if only the parent email or an attachment to an email is responsive, except for those documents identified below. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

   i. If a Party is producing a hard copy printout of an email with its attachments, the attachments should be processed in order

behind the e-mail to the extent that is how the hard copy is maintained in the ordinary course of business.

    ii. A Producing Party need not produce an attachment that is a junk file or non-user-created content routinely excluded during processing without logging that exclusion.

i. Production deliverables shall include both a metadata (.dat) file and an image cross-reference load file (.opt). The .dat file shall contain all fielded data at the document level for the production, including the beginning bates number for each record, the relative path to the text files for each record, and, for native files, the relative path to the native file for each record. The .dat file shall include all metadata fields identified in **Appendix A**. To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this order shall require any Party to extract, capture, collect or produce such metadata. The .opt file shall provide image cross reference information for TIFF images (including native placeholders and placeholder documents for family members withheld for privilege or work-product protection) and shall identify unitization information. The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the image load files in the production.

i. All native format files shall be produced in a folder named "NATIVE," which shall contain sub-folders named "0001," "0002," etc. Each sub-folder shall contain no more than 10,000 files.

ii. All TIFF images shall be produced in a folder named "IMAGE," which shall contain sub-folders named "0001," "0002," etc. Each sub-folder shall contain no more than 10,000 images. Images from a single document shall not span multiple sub-folders.

iii. All extracted Text and OCR files shall be produced in a folder named "TEXT."

iv. All load files shall be produced in a folder named "DATA" or at the root directory of the production media, which shall contain sub-folders named "0001," "0002," etc. Each sub-folder shall contain no more than 10,000 files.

j. Each ESI item or paper document produced under this ESI Protocol, whether produced in native format or as a TIFF image, shall be accompanied by an extracted text file (for ESI) or OCR text file (for paper documents and redacted documents) in the text directory and provided in a "text" folder on the production media as specified below. All text files shall be provided as a single document level text file for each item, not one text file per page.

14

i.  For paper documents, where OCR is used, the Producing Party will utilize industry standard OCR processes and technology; however, the Producing Party is not certifying that the accompanying text file is accurate or reliable for searching purposes beyond the application of the underlying OCR technology. OCR text files should indicate page breaks where practicable.

ii. Except for redacted documents, emails and other ESI will be accompanied by a text file with text extracted directly from the native electronic file.

iii. For TIFFs, the file name of each extracted text or OCR file should be identical to that of the Bates number of the first image page of its corresponding document, followed by .txt. For native documents, the file name of each extracted text file should be identical to that of the Bates number assigned to the corresponding native document.

iv. Extracted text/OCR text files should be provided in a "Text" folder on the provided media.

k.  **Personal Data Redactions**: A Producing Party may redact personal information to the extent that the information falls within one of the following categories and such redactions should be identified as "Redacted – Personal Data" on the document:

    i.   the information relates to medical or health issues of an individual;

    ii.   social security numbers, bank account information, or personal passcodes;

    iii.   personal contact information of non-relevant third parties (such as friends or family);

    iv.   sensitive personal information (such as marital status, sexual affiliation, religious beliefs, political affiliation, or other sensitive personal information that could harm the individual if released); or

    v.   personal information required to be redacted by law.

Upon request from the the Requesting Party, the Producing Party shall provide a more detailed explanation of any personal data redaction. The Requesting Party and the Producing Party shall meet and confer if the Requesting Party believes that the relevant personal data should not be redacted.

l.   **Production Media & Protocol**: A Producing Party may produce documents via readily accessible computer or electronic media (including, e.g., CD-ROM, DVD, or external hard drive with standard PC compatible interface) ("Production Media"), or via secure file-sharing service (including any network-based secure file transfer mechanism or SFTP). Any party receiving the production of

documents ("Receiving Party") that is unable to resolve any technical issues with the electronic production method used for a particular production may request that a Producing Party provide a copy of that production using Production Media. The Producing Party may encrypt Production Media, and will provide a decryption key to the Receiving Party in a communication separate from the production itself.

m. If ESI that has been previously produced in another litigation or proceeding is proportionate and responsive to discovery requests, a Party may reproduce that prior production as it exists without modification.

10. **Paper Document Unitization**. Paper documents should be logically unitized for production to the extent reasonably practicable. Generally, when scanning paper documents for production, distinct documents shall not be merged into a single record and single documents shall not be split into multiple records. The Parties will make reasonable efforts to unitize documents correctly.

a. **Relationship**: The relationship among the documents in a folder or other grouping should be reflected in proper coding of the beginning and ending document and attachment fields to the extent reasonably practicable.

b. **Identification**: Where a document, or a document group – such as folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as the first page of the document or grouping.

11. **Bates Numbering**.

a. All images must be assigned a Bates number that must always: (1) be unique across the entire document production; (2) maintain a constant prefix and length (ten-digits and 0-padded) across the entire production; (3) contain no special characters or embedded spaces, except hyphens or underscores; (4) be sequential within a given document; and (5) identify the Producing Party. To the extent reasonably practicable, the Bates number must also maintain consistent numbering across a family of documents;

b. If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production;

c. The Producing Party will brand all TIFF images at a location that does not obliterate or obscure any part of the underlying images.

12. **Confidentiality Designations**. If a particular paper document or ESI item qualifies for confidential treatment under the terms of a Protective Order entered by the Court in the above-captioned case ("Litigation") or a confidentiality stipulation entered into by the Parties, the designation

18

shall be branded on the document's image at a location that does not obliterate or obscure any part of the underlying images. This designation also should be included in the appropriate data field in the load file. For documents produced in native format with image placeholders, the placeholder image for the native file should be branded with the appropriate confidentiality designation to the extent possible. Receiving Parties shall ensure that documents are treated consistent with their confidentiality designation regardless of whether the designation imprints on the file when viewed in printed form. Failure to comply with the procedures set forth in this ESI Protocol Order, any protective order or confidential order, or any confidential stipulation shall not waive any protection or confidential treatment.

13. **Production Processing**.

a. **System Files**: The Parties shall use best efforts to exclude from ESI preservation and production those files in the standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology; temporary or ephemeral data; slack, fragmented, and unallocated data; duplicative back-up data; information from mobile devices that otherwise resides in other reasonably accessible data sources; online access data, such as temporary files, cache files, internet browsing histories, and cookies; systems and back-up files that are no longer

in use and cannot be accessed without undue burden; ephemeral messaging systems that do not retain messages or data; and internet-based storage systems that are duplicative of other data sources. Other file types may be added to the list of excluded files if they do not have user-created content upon agreement of the Parties.

b. **Metadata fields and processing**:

   i. **Time Zone**: ESI items shall be processed using a reasonable time zone for each Party and supplying the appropriate Time Zone offset and original Time Zone information as a part of the metadata.

   ii. **Auto Date/Time Stamps**: To the extent reasonably feasible, ESI items shall be processed so as to preserve: (1) the date and time when the document was created; and (2) the date and time when the document was last saved, updated, and/or modified, not the date of collection or processing.

c. **Hidden Text**: ESI items shall be processed in a manner that preserves hidden columns or rows, hidden text, worksheets, speaker notes, tracked changes, and comments.

d. **Thread Suppression**:

   i. Threads are communications that contain prior or lesser-inclusive communications that also may exist separately in the party's electronic files. A most inclusive thread is one that

contains all of the prior or lesser-inclusive communications, including attachments, for that branch of the thread.

ii. A Party is permitted to produce only the most inclusive threads, or more inclusive threads, as opposed to each individual communication.

iii. An email that includes content in the BCC or other blind copy field shall not be treated as an inclusive email in an email chain, it should not be suppressed even if all other content in the email is contained in another member of the email chain.

iv. Following production of any threads, a Requesting Party may make reasonable requests for production of individual lesser-inclusive communications. The Producing Party shall cooperate reasonably in responding to any such requests.

e. **Reduplication**:

i. A Producing Party shall use reasonable efforts to deduplicate globally (i.e., across document custodians) and horizontally (i.e., within a custodial collection) at the "family" level (i.e., if there are identical child documents that have unique parents, they are not duplicates; an attachment to a document is not a duplicate of the same document maintained as a standalone document). To the extent practicable, all custodians subject to production who were in possession of the deduplicated

document shall be identified in the "All Custodian" metadata field of the copy of the single record that is produced. Multiple custodians in the "All Custodians" field shall be separated by semicolons. If processing and production is done on a rolling basis, an updated "All Custodians" field with additional values shall be provided in an overlay. In the event of rolling productions of documents or ESI items, the Producing Party will, as needed and to the extent practicable, supplement the load files with updated All Custodian information, as well as BCC information to the extent such metadata exists. Duplicate custodian information may be provided by a metadata "overlay" and will be provided by a Producing Party after the Party has substantially completed its production of ESI.

ii. An email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

iii. Duplicate electronic documents shall be identified by a commercially accepted industry standard (e.g., MD5 or SHA-1 hash values) for binary file content. All electronic documents bearing an identical hash value are a duplicate group. Any

other methodology for identification of duplicates, including email field selection for hash value creation, must be disclosed to the Requesting Party.

14. **Privilege**.

    a. Except as provided otherwise below, for any responsive document withheld in its entirety, the Producing Party will produce privilege logs in MS Excel format or any other format that permits electronic sorting and searching. Privilege logs must be produced on a rolling basis within 60 days of the substantial completion of document discovery.

    b. The Requesting Party may request, on a document-by-document basis, an explanation for the privilege basis of a redacted document to the extent it cannot be identified on its face.

    c. The type of privilege or protection being asserted (attorney client, work product, PII, etc.) shall either appear in the face of a redaction or in a metadata field.

    d. **Metadata Fields**: The Parties agree that the following list of metadata fields, if reasonably accessible and unnecessary to protect the privilege, will be produced in a privilege log:

        i. BegBates or Priv Log ID

        ii. EndBates

        iii. BegAttach

    iv.  End Attach

    v.  CustodianAll

    vi.  Email Thread ID

    vii.  EmailSubject

    viii.  Date Sent

    ix.  To/From/CC/BCC

    x.  Doc Title

    xi.  Author

    xii.  DocExt

    xiii.  Production Volume

    xiv.  Paper

e.  Emails containing privileged information may be included in a privilege log as the most inclusive version of the email thread that is available, as long as all recipients not present in the most inclusive thread are also either listed or otherwise included on the log or the Producing Party may provide a redacted version of the thread reflecting recipients.

f.  Parties are not required to include on privilege logs any document generated after the filing of the initial complaint, created by outside counsel, including counsel employed by the Attorneys General of the Plaintiff States, and concerning this Litigation.

g.  Parties are not required to include on privilege logs any document or communication, dated after the filing of the initial complaint, that is sent to or received from outside legal counsel, including counsel employed by the Attorneys General of the Plaintiff States.

h.  Parties are not required to include on privilege logs any document or communication, dated after the filing of the initial complaint, concerning this Litigation that is sent to or received from in-house counsel.

i.  Plaintiff States are not required to include on privilege logs any document or communication related to the preparation of the initial complaint or other initiating filings concerning this Litigation when such document or communication was:

    i.  Sent between legal counsel employed by the Attorneys General of the Plaintiff States, including outside legal counsel employed by the Attorneys General of the Plaintiff States;

    ii.  Sent between Plaintiff States and legal counsel employed by the Attorneys General of the Plaintiff States, including outside legal counsel employed by the Attorneys General of the Plaintiff States; and/or

    iii.  Was otherwise generated by Plaintiff States or their legal counsel, including outside legal counsel employed by the

Attorneys General of the Plaintiff States, for the purpose of preparing the initial complaint or other initiating documents.

j. A Party shall only be required to include one entry on the privilege log to identify each family of documents that are withheld in their entirety for privilege (parent and child[ren]) taken together ("Family"); provided, however, that the privilege log entry for any Family shall identify that the documents are part of a Family (e.g., "Email and attachments...") and provide the names and a brief description of the attachments in a separate field. If only a portion of a family of documents contains privileged information, the Family should be produced in redacted format. The Parties agree to meet and confer in good faith regarding any disagreement.

k. Redacted documents are not required to be included in a Party's privilege log.

l. The Parties will discuss other categories of documents that may be excluded from the privilege log, and will also discuss forgoing using traditional document-by-document logs in favor of alternate logging methods, such as including only information from particular metadata fields (e.g., author, recipient, date), only if such alternative logging mechanisms allow for sufficient identification of any claim of privilege to allow the Requesting Party to assess and challenge any

claim of privilege. Compliance with the logging provisions of this section shall not constitute a waiver of any privilege or protection.

m. If the items redacted and partially withheld from production are audio/visual files, the Producing Party shall, to the extent reasonably practicable, provide the unredacted portions of the content. If the content is a voice recording, the Parties shall meet and confer to discuss the appropriate manner for the Producing Party to produce the relevant and discoverable portion of the content.

n. No provision of this Order limits the authority of the Court to issue a non-waiver order on other terms and conditions pursuant to Fed. R. Evid. 502(d).

15. **Production of Privileged Material**.

a. Pursuant to Federal Rule of Civil Procedure 26, and Federal Rule of Evidence 502(d) and (e), the Parties agree that the production or disclosure, whether inadvertent or otherwise, of any information in connection with the pending Litigation that is covered by the attorney-client privilege or work-product protection (including common interest and joint defense), or any other privilege, shall not constitute a waiver of such privilege or protection in this Litigation or in any other federal or state proceeding. Instead, the Producing Party shall be entitled to assert such privilege or protection, request the return of any produced material or information on the grounds of

27

privilege or work product protection and the information and its subject matter shall be treated as if there has been no such disclosure. The provisions of Federal Rule of Evidence 502(b) do not apply.

b.  Nothing in this paragraph is intended to or shall serve to limit a Party's right to conduct a review of any material or information for relevance, responsiveness, and/or segregation of privileged and/or protected information before production, subject to subsection (c) below.

c.  **Assertion of a Clawback**: In the event that a Producing Party or nonparty discovers that it produced documents that it believes to be protected, it shall promptly provide written notice sufficiently identifying documents or information it seeks to clawback to the Receiving Party, or to both Plaintiffs and Defendants if the Producing Party is a non-party (a "Clawback Notice"). Any document that is the subject of a Clawback Notice shall be included on a privilege log as required by the procedures agreed to in this Order. The Parties shall make reasonable efforts to provide any Clawback Notice and related log no later than 14 days before the deposition of a witness who received, drafted, or sent a protected documents. If a document is clawed back during a deposition, the Parties will meet and confer regarding whether the deposition needs to be continued

after the resolution of any privilege challenge concerning the clawed-back document.

d. **Reproduction**: As soon as practicable or within a reasonable time after providing the Clawback Notice, the Producing Party or non-party shall provide: (i) if only a portion of the document contains privileged or protected material, a new copy of the document utilizing the same Bates number(s) as the original, that has been redacted to protect the privileged or protected materials; or (ii) if the entire document is privileged or protected, a slip sheet identifying the same Bates number(s) as the original, noting that the document has been withheld.

e. **Clawback Process**: Upon notification from the Producing Party that information is, in good faith, covered by the attorney-client privilege or work product protection, the Receiving Party will, within 14 days of notification: (a) return the information and all copies of the information in its possession; (b) delete any electronic versions from any data source or any database it maintains, except a party need not destroy the original production volume zip file; (c) retrieve all electronic and paper copies provided to any non-parties, including experts; and (d) sequester any notes that reveal the substance of the protected information. The Receiving Party will promptly confirm in writing to the Producing Party that these steps will be taken. In the

event that the Receiving Party disagrees that the information requested back is privileged, the Receiving Party may retain a single copy of the disputed information for the sole purpose of resolving the dispute. The Receiving Party and the Producing Party shall attempt in good faith to resolve the dispute informally. If the Receiving Party and the Producing Party cannot resolve the dispute informally, either Party may seek appropriate relief from the Court. The Party disputing the assertion of privilege may not file or submit the disputed document for in camera review absent agreement of the Producing Party or express authorization from the Court. The Producing Party must preserve the information pending resolution of the privilege challenge and, in the event the Court concludes that the information is not protected from disclosure, promptly provide the Receiving Party with a replacement production.

So **ORDERED** and **SIGNED** this **5th**   day of **November, 2025.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE

## Appendix A: ESI Metadata and Coding Fields

| Field | Description | Email | Non-Email ESI | Scanned Hard Copy |
|---|---|---|---|---|
| BegBates | Beginning page Bates number | X | X | X |
| EndBates | Beginning page Bates number | X | X | X |
| BegAttach[2] | Beginning page of the first document within a family populated for all documents in that family, including parent and attachments. | X | X | X |
| EndAttach | Ending page of attachment range | X | X | X |
| AttachCount | Number of attachments to an email | X | X | |
| AllCustodian | Production custodians or non-human production data sources associated with the produced document | X | X | X |
| Custodian | Production custodian from or non-human production data source from which produced file was taken | X | X | X |
| FileName | File name of document | X | X | |
| FileExt | File extension of document | X | X | |
| FileSize | The original file size of the produced document | X | X | |
| PageCount | For documents produced in TIFF form, number of pages in the document. For documents produced in native, page count will be 1 (for placeholder). | X | X | X |

---

[2] Field names can vary from system to system and even between different versions of systems. Thus, Parties are to be guided by these Field Names and Field Descriptions when identifying the metadata fields to be produced for a given document pursuant to this ESI Protocol.

| DocTitle | File name of the non-email document | | X | |
|---|---|---|---|---|
| EmailSubject | Subject of email | X | | |
| Author | Document author | | X | |
| From | Email, chat, or message author | X | X | |
| To | Email, chat, or message recipients | X | X | |
| CC | Email copies | X | | |
| BCC | Email blind copies | X | | |
| Importance | Email importance flag | X | | |
| DateSent | Date sent (mm/dd/yyyy format) | X | | |
| TimeSent | Time sent (hh:mm:ss format) | X | | |
| DateRec | Date received (mm/dd/yyyy format) | X | | |
| TimeRec | Time received (hh:mm:ss format) | X | | |
| DateCreated | Date created | X | X | |
| TimeCreated | Time created (hh:mm:ss format) | X | X | |
| DateLastMod | Last modification date (mm/dd/yyyy format) | X | X | |
| TimeLastMod | Last modification time (hh:mm:ss format) | X | X | |
| HashValue | Unique electronic signature of email or electronic file | X | X | |
| EmailThreadFamID | Unique identifier from email threading algorithm to denote emails from a single thread and all attachments | X | X | |
| MSGID | Email: "Unique Message ID" field | X | | |
| ProdVol | Production volume name (date of production not needed) | X | X | X |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | X | X | X |

| TextPath | Path to load extracted text (e.g., \\Prod001\Text\ABC00 0001.txt | X | X | X |
|---|---|---|---|---|
| NativePath | Path to native file (e.g., \\Prod001\Natives\ABC 0000001.xls | X | X | |
| Redacted | Descriptor for documents that have been redacted ( or ) | X | X | X |
| Paper | Descriptor for whether original was paper document ( or ) | X | X | X |