**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| STATE OF TEXAS, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 6:24-cv-437-JDK |
| | § | |
| BLACKROCK, INC., *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**
**ON MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**

In this antitrust case, several States sued BlackRock, Inc. and State Street Corporation[1] alleging violations of the Clayton Act, Sherman Act, nine States' antitrust laws, and five States' consumer protection laws. Docket No. 50. In August 2025, the Court issued a 61-page written opinion resolving Defendants' motions to dismiss. Docket No. 113. Plaintiffs later filed an amended complaint in January 2026. Docket No. 145. Now before the Court is Defendants' joint motion for partial judgment on the pleadings. Docket No. 152.

For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

## I.

Federal Rule of Civil Procedure 12(c) permits parties to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay

[1] Plaintiffs also sued The Vanguard Group, Inc., but those claims were dismissed with prejudice on February 26, 2026. Docket No. 148.

trial." A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Garza v. Escobar*, 972 F.3d 721, 727 (5th Cir. 2020). Rule 12(c) motions "are viewed with disfavor and are rarely granted." *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005).

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.,* 313 F.3d 305, 312 (5th Cir. 2002). "The court 'accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). "[T]he court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Great Plains*, 313 F.3d at 313 (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

**II.**

Defendants first argue that Plaintiffs lack standing to pursue damages "on behalf of electricity purchasers—or any other consumers who bought products at prices that were indirectly affected by the price of thermal coal." Docket No. 152 at 3.

In response, Plaintiffs state that only Iowa and Nebraska are asserting claims on behalf of electricity purchasers, and their respective State antitrust laws permit such claims. Docket No. 155 at 5. Accordingly, to the extent the complaint asserts indirect-purchaser claims by States other than Iowa and Nebraska or by any State under federal law, Plaintiffs have waived those claims. *See Indigenous Peoples of the Coastal Bend v. U.S. Army Corps of Eng'rs*, 132 F.4th 872, 882–83 (5th Cir. 2025) ("[W]aiver occurs when the party fails to pursue a claim beyond the complaint, including by . . . not defending it in response to a dispositive motion."); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 459 (5th Cir. 2022) (affirming district court's dismissal of claims plaintiff did not address in response to defendant's motion for judgment on the pleadings and noting that a "plaintiff abandons claims when it fails to address the claims or oppose a motion challenging those claims"). Defendants' motion to dismiss these claims is therefore **GRANTED**.

With respect to the indirect-purchaser claims by Nebraska and Iowa, however, the Court **DENIES** Defendants' motion. Both States have enacted laws permitting indirect purchasers to sue when they are injured by an antitrust violation. NEB. REV. STAT. § 59-821 (permitting any person who is injured, "whether such injured person dealt directly or indirectly with the defendant," to sue for violations of the antitrust laws); IOWA CODE § 553.12 ("[A] person who is injured . . . by conduct prohibited under this chapter may bring suit."); *see also Comes v. Microsoft Corp.*, 646 N.W.2d 440, 445 (Iowa 2002) ("Given the clear, broad language of the state antitrust law, we conclude the Iowa Competition Law creates a cause of action for *all* consumers, regardless of

one's technical status as a direct or indirect purchaser."). Here, moreover, these claims are brought not by private parties but by the States' respective Attorneys General, who are authorized to bring civil actions to enforce their States' antitrust laws on behalf of consumers as *parens patriae*. *See* IOWA CODE § 553.7 ("The attorney general . . . shall institute all criminal and civil actions and proceedings brought under this Act in the name of the state."); NEB. REV. STAT. § 59-828 ("It is hereby made the duty of the Attorney General . . . to institute and prosecute such proceedings as may be necessary to carry into effect sections 59-801 to 59-831."). Thus, many of Defendants' standing arguments simply do not apply to the claims brought by Iowa and Nebraska. In fact, Defendants cite no cases in which a court held that Iowa and Nebraska lack standing to bring claims on behalf of indirect purchasers in similar circumstances.

Defendants nevertheless argue that Iowa and Nebraska lack standing here for two primary reasons. *First*, Defendants claim that Plaintiffs have failed to "bridge the gap" between Defendants' alleged misconduct, the coal market, and the ultimate consumer of electricity. Docket No. 152 at 5–11; Docket No. 157 at 4–9. But the Court has already ruled that Plaintiffs adequately stated a claim in their first amended complaint that Defendants' conduct reduced coal output in the relevant markets and that energy prices increased for consumers as a result. *See* Docket No. 113 at 3–4, 14, 18–19. Plaintiffs' second amended complaint alleges the same material facts. *See* Docket No. 145 ¶¶ 1, 6, 9, 241 (alleging that Defendants' anticompetitive acts decreased coal production and increased energy prices); *id.*

¶¶ 226, 228–30 (alleging, in detail, decreases in production and increases in prices). For Iowa and Nebraska, moreover, Plaintiffs specifically allege that coal generates 23.5% of Iowa's electricity and 45% of Nebraska's. Docket No. 145 ¶¶ 245, 253. For Nebraska, Plaintiffs further state that conduct restricting or lessening the production of coal "will affect the cost and quality of energy generation in Nebraska, including electricity that is critical for winter heat, summer cooling, and fueling Nebraska's robust energy-intensive agricultural industry." *Id.* ¶ 248. Similarly, for Iowa, Plaintiffs allege that, "[a]s a result of Defendants' conduct, Iowa consumers had to pay tens of millions of dollars more for electricity than they would have had to pay had Iowa utilities been able to acquire SPRB coal at prices determined in a free and competitive market." *Id.* ¶ 257. Plaintiffs' allegations adequately establish a causal link between Defendants' anticompetitive activities and the injuries suffered by Iowa and Nebraska power consumers.[2] *See Ohio v. Am. Express Co.*, 585 U.S. 529, 541–42 (2018) (explaining that a plaintiff can show an "anticompetitive effect that harms consumers in the relevant market" with "[d]irect evidence" such as "reduced output [or] increased prices").

*Second*, Defendants argue that Plaintiffs have not pleaded proximate causation as required by *Associated General Contractors of California v. California State Council of Carpenters ("AGC")*, 459 U.S. 519 (1983). Docket No. 152 at 3–5, 11–

[2] Defendants repeatedly assert that these allegations are too speculative. *See, e.g.*, Docket no. 152 at 8, 10, 12; Docket No. 157 at 5, 9. But at this stage of the proceeding, the Court assumes the truth of Plaintiffs' allegations. *Guidry*, 512 F.3d at 180. And Plaintiffs claim they "will be able to establish precisely the amount that the price paid for electric power by each States' consumers incorporated the supra-competitive prices for coal that resulted from Defendants' output reduction conspiracy." Docket No. 155 at 8.

13; Docket No. 157 at 9–10. Putting aside whether *AGC* applies to claims brought by state Attorneys General, the Court finds that Plaintiffs' allegations are *AGC*-sufficient. As noted above, Plaintiffs adequately alleged a causal connection between the antitrust violation and the alleged injury, which is the type of injury the antitrust laws are designed to prevent. *AGC*, 459 U.S. at 537–38. Further, although the injury to energy consumers here is indirect, Iowa and Nebraska expressly permit such claims, and Plaintiffs repeatedly allege that the line from Defendants' antitrust conduct to the States' damages is straight and easy to discern. *See, e.g.*, Docket No. 145 ¶ 229 (alleging that "the price per ton of thermal coal" increased by 25.52% while coal companies in which Defendants held major stakes decreased production by 19.2%); *id.* ¶ 248 ("Conduct that seeks to restrict, reduce, or otherwise lessen the production of coal will affect the cost and quality of energy generation in Nebraska, including electricity that is critical for winter heat, summer cooling, and fueling Nebraska's robust energy-intensive agricultural industry."); *id.* ¶¶ 256–57 (alleging that, in Iowa, "Defendants' efforts to reduce the output of SPRB coal resulted in the price per short-ton of SPRB coal being routinely set at levels $2 to $5 above the competitive market price level" and that "Iowa consumers had to pay tens of millions of dollars more for electricity").

*AGC* also scrutinizes whether a more direct victim is a better plaintiff and whether the potential "for duplicative recovery" exists. *AGC*, 459 U.S. at 541–44. To be sure, direct purchasers may be more direct victims of Defendants' alleged misconduct, but again, Iowa and Nebraska expressly permit claims to be brought by

indirect purchasers—and authorize their Attorneys General to bring them. *Cf. In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 510, 545–47 (N.D. Ill. 2019) (permitting similar claims by indirect purchasers). As to the risk of multiple lawsuits or duplicative recoveries, the same consideration applies: when a state permits an indirect purchaser to sue, any risk of duplication is statutorily permitted. *See id.*; *see also Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 520 (Tenn. 2005) (dismissing "[t]he risk that an antitrust violator may be subject to both a direct purchaser suit and an indirect purchaser suit" as a sufficient basis to deny standing where indirect purchaser suits are permitted). The same is true for complex damages apportionments. *See Comes*, 646 N.W.2d at 451 ("[T]he possibility of complex litigation is an insufficient reason for us to find indirect purchasers must be barred from bringing a state cause of action for antitrust violations."); *Freeman*, 172 S.W.3d at 520 ("We do not believe that the ends of justice should be defeated simply because the risk of complicated litigation exists."); *Sandoz*, 820 F. Supp. 3d at 149 ("In deference to the States' policy choices to adopt *Illinois Brick*-repealer statutes, I give little weight to this concern.").

The cases cited by Defendants, moreover, are distinguishable. Although the courts in some cases found a lack of standing under *AGC*, the jurisdictions in those cases did not permit claims by indirect purchasers, unlike Iowa and Nebraska here. *See, e.g.*, *Breiding v. Eversource Energy,* 344 F. Supp. 3d 433, 456 (D. Mass. 2018). In other cases, courts found a lack of standing under *AGC* where "nonpurchasers" brought the lawsuit. *See, e.g.*, *McGarry & McGarry, LLC v. Bankr. Mgmt. Sols., Inc.*,

937 F.3d 1056, 1061 (7th Cir. 2019) ("[Plaintiff] is not even an *indirect* purchaser of bankruptcy software services; it does not purchase these services at all."). Defendants' citing of *Southard* and *Kanne* is unhelpful for the same reason. *See Southard v. Visa U.S.A., Inc.*, 734 N.W.2d 192, 197, 199 (Iowa 2007) (describing plaintiffs as "nonpurchasers" and stating that "they did not purchase, directly or indirectly, the product that is the subject of anticompetitive activity"); *Kanne v. Visa U.S.A. Inc.*, 723 N.W.2d 293, 301 (Neb. 2006) ("[A]ppellants are not indirect purchasers.").

Accordingly, Defendants' motion for judgment on Iowa's and Nebraska's indirect-purchaser claims is **DENIED**.

**III.**

Defendants next argue that Plaintiffs cannot bring claims for damages on behalf of coal buyers under Sections 4C and 16 of the Clayton Act because Section 4C permits *parens patriae* claims only on behalf of natural persons and Section 16 permits only injunctive relief. Docket No. 152 at 13.

Plaintiffs do not contest this point and have thus waived any claim for damages on this basis. *See* Docket No. 155 at 1 ("Plaintiffs do not contest the second point . . . at this time."); *Indigenous Peoples*, 132 F.4th at 882–83; *Terry Black's Barbecue*, 22 F.4th at 459.

Accordingly, Defendants' motion for judgment on the damage claims on behalf of coal buyers is **GRANTED**.

**IV.**

Defendants seek judgment on Iowa's claim for civil antitrust penalties. Docket No. 152 at 14. Defendants argue that Iowa law permits penalties only against entities who sell a product in the relevant market—here, coal. Because Defendants do not sell coal, they argue, a penalty may not be assessed against them. The Court agrees.

Section 553.13 of the Iowa Competition Law provides in relevant part:

> [T]he state may bring suit to assess a civil penalty against an enterprise whose conduct is prohibited under this chapter. . . . The civil penalty assessed shall not exceed ten percent of the total value of the specific commodities by their brand, make, and size or of services either of which were the subject of the prohibited conduct sold in the relevant market in this state by the enterprise in each year in which this conduct occurred, but this penalty shall not exceed one hundred fifty thousand dollars.

IOWA CODE § 553.13. Section 553.13 thus permits a penalty against "an enterprise" violating the antitrust laws, but the penalty is based on the "value of the specific commodities . . . sold in the relevant market . . . by the enterprise." As Defendants observe, because they have no sales in the relevant market, there is nothing on which to base a penalty. Docket No. 152 at 14–15; Docket No. 157 at 10.

Plaintiffs ask the Court to look beyond the text and consider legislative intent, which is "to fix the civil penalty that may be imposed on those whose conduct violated the law." Docket No. 155 at 21. But the text is the best indicator of a legislature's intent, and the text of § 553.13 does not support a penalty in these circumstances. *See Doe v. State*, 943 N.W.2d 608, 610 (Iowa 2020) ("[W]e do not inquire what the legislature meant; we ask only what the statute means.") (quoting Oliver Wendell Holmes, *The Theory of Legal Interpretation*, 12 HARV. L. REV. 417, 419 (1899)); *see*

*also* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 56 (2012) ("[T]he purpose must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter's desires."). Plaintiffs also say that not awarding penalties here would "achieve[] an absurd result," Docket No. 155 at 21, but there's nothing absurd about imposing penalties only on those who sell in the relevant market.

Accordingly, Defendants' motion for judgment on Plaintiffs' claims for civil penalties under Iowa law is **GRANTED**.

**V.**

Finally, Defendants argue that "[t]he Court should again enter judgment on the Louisiana and Nebraska consumer protection claims, which the Court dismissed and which Plaintiffs reallege only 'to avoid any waiver.'" Docket No. 152 at 15.

Plaintiffs again do not contest this point, and thus dismissal is proper. *See* Docket No. 155 at 1 ("Plaintiffs do not contest the . . . fourth point at this time."); *Indigenous Peoples*, 132 F.4th at 882–83; *Terry Black's Barbecue*, 22 F.4th at 459.

Accordingly, Defendants' motion for judgment on the Louisiana and Nebraska consumer protection claims is **GRANTED**.

**VI.**

In sum, Defendants' joint motion for partial judgment on the pleadings (Docket No. 152) is **GRANTED in part** and **DENIED in part**. The following claims are dismissed: indirect-purchaser claims by States other than Iowa and Nebraska or by any State under federal law; claims for damages on behalf of coal buyers under

Sections 4C and 16 of the Clayton Act; Iowa's claim for civil antitrust penalties; and Counts XVIII, XIX, and XX.

So **ORDERED** and **SIGNED** this **30th** day of **October, 2026.**

JEREMY D. KERNODLE
UNITED STATES DISTRICT JUDGE